CATHERINE A. ADELSBERGER, Administratrix of the Estate of FRANK J. ADELSBERGER, v. WILLIAM P. SHEEHY, Appellant.—59 S. W. (2d) 644.

Division One, April 20, 1933.

*Jones, Hocker, Sullivan & Gladney* and *Willard A. McCaleb* for appellant.

956

*B. Sherman Landau* for respondent.

FRANK, P. J.—Action by Frank Adelsberger, plaintiff to recover damages for personal injuries. The trial below resulted in a judgment for plaintiff in the sum of $10,000 and defendant appealed. Plaintiff died since the appeal and the cause was revived in the name of Catherine Adelsberger, administratrix of his estate.

Plaintiff was injured in a collision between two automobiles at the intersection of Magnolia and Nebraska Avenues in the city of St. Louis. Appellant concedes its liability to plaintiff for the injuries he received but contends that the damages awarded are grossly excessive, due to the fact that the court by plaintiff's Instruction No. 1 authorized the jury to award damages for permanent injuries, when, in fact, there was no evidence tending to show that any of the injuries received by plaintiff were permanent.

Respondent contends that plaintiff's injuries permanently aggravated his heart disease, while appellant insists that the evidence does not support this contention.

Plaintiff was working for the American Car and Foundry Company as a press punch operator. The collision in which he was injured occurred shortly after noon on Saturday, July 14, 1928. He returned to work on the following Monday and thereafter lost only four days work between the date of the injury and the date of the trial which occurred sixteen months after the injury.

The petition alleges and the evidence shows that plaintiff was afflicted with a heart condition known as "aortic insufficiency" prior to the time he was injured. The contention is that the injury permanently aggravated his heart condition. Dr. Sigoloff, plaintiff's physician and witness, testified that in cases of aortic insufficiency the left ventricle has two volumes of blood to take care of, the blood entering from the left auricle and the blood returning through the defective aortic valve; that in order to overcome this condition, the left ventricle increases in size and thickness to take care of the increased volume of blood; that when it does so, the heart has reached a state of compensation; that aortic insufficiency of the heart will not affect one if the heart is fully compensated until after the muscle weakens, then the chamber enlarges and there is a state of ruptured or failing compensation, in which we get signs of failure of the heart; that plaintiff was in that condition when he was examined just prior to the trial. Dr. Sigoloff further testified that it was possible for a state of ruptured compensation to be caused by physical shock such as one receives in an accident.

It is plaintiff's position that although he was afflicted with aortic insufficiency of the heart prior to his injury, his heart was fully compensated and was not giving him any trouble, but the injury he received in the collision caused a state of ruptured compensation and thereby produced the condition he was in at the time of the trial. The evidence does not support this contention. Dr. Sigoloff examined plaintiff on the day he was injured and found he was afflicted with a heart trouble known as aortic insufficiency, a progressive and incurable disease. He did not testify that plaintiff's heart had reached a state of compensation prior to his injury. Neither did he testify that the heart was in a state of ruptured compensation when he examined him on the day of and after the injury. While Dr. Sigoloff testified that it was possible for a state of "ruptured compensation" to be caused by physical shock such as one receives in an injury, he did not testify that such a thing happened in this case. In other words, he testified as to what could possibly happen in a given case, but he did not venture an opinion one way or the other as to what effect, if any, plaintiff's injuries had upon his heart condition which he had prior to his injury.

Plaintiff testified that he had heart trouble before the injury but it did not bother him; that he did not have shortness of breath before he was injured; that some short time after the accident he noticed

heavy breathing; that his present condition was such that if he exerted himself he was very nervous, and short of breath; that exertion tired him very much and his heart caused shortness of breath, discomfort and pain at times; that he was not in that condition prior to the injury, and had not been treated for heart trouble prior thereto.

Plaintiff himself and Dr. Sigoloff were the only witnesses who testified on behalf of plaintiff.

Pursuant to a court order Dr. Jacobson examined plaintiff about a week prior to the trial. Defendant called Dr. Jacobson as a witness. Respondent contends that his evidence tends to show that plaintiff's injuries permanently aggravated his heart condition. The testimony upon which respondent relies follows:

"Q. . . . I will ask you if, in your opinion, given the history of the case, whether the alleged injuries aggravated it or increased it in any way? A. It no doubt aggravated it.

"Q. Now, just what do you mean by that? A. That the excitement and the condition of the heart at the time caused it to be aggravated.

"Q. Would that be just of a temporary character? A. That I would not state."

While Dr. Jacobson testified that the excitement produced by the collision no doubt aggravated plaintiff's heart condition, he declined to say that such aggravation was "just of a temporary character." It clearly appears from other testimony of Dr. Jacobson that his reason for declining to say the aggravation was temporary was because he had no opinion on that subject. He examined plaintiff about one week before the trial. He testified that from his examination of plaintiff he believed that his heart was in a diseased condition before the injury; that from what he found upon his examination, and from the history of the case, plaintiff's condition could have been caused from trauma or from other causes, but he did not arrive at any opinion or judgment about the matter one way or the other.

Dr. Bristow was called as a witness by defendant. Without going into his evidence in detail, it will be sufficient to state that he testified that plaintiff's injuries could not have permanently aggravated the condition of his heart.

It is clear that a jury could not except by pure guess and speculation, find from the testimony of the three doctors that plaintiff's injuries permanently aggravated his heart condition because neither of them so testified.

It is true that plaintiff testified that his heart did not give him any trouble before the injury, but some short time after the injury the symptoms of heart trouble manifested themselves. As a matter of course, plaintiff would know how he felt before and shortly after the injury, but no layman would be competent to say what caused a heart condition. The medical testimony is that aortic in-

sufficiency of the heart is a progressive and incurable disease; that one may have the disease for years and not suffer any pain or inconvenience therefrom until the muscles begin to weaken from overwork, and then signs of heart failure appear; that it gradually weakens the system and there is practically no way to stop it after it starts. The sum total of the evidence is that the condition of plaintiff's heart at the time of the trial might or could have been caused by shock such as one receives in an accident, or by the ravages of the disease which plaintiff had at and prior to the date of his injury. If the heart condition was caused by ravages of the disease, defendant is not liable therefor. The burden was on the plaintiff to show the cause. Evidence that the condition might or could have been caused by either injury or disease without any substantial showing as to which of the possible causes did produce the condition, furnishes no basis from which a jury could determine the cause. [O'Leary v. Scullin Steel Company, 303 Mo. 363, 375, 260 S. W. 55.]

Respondent contends that plaintiff received a pleural injury which caused an adhesion of the pleura to the diaphragm thereby permanently impairing the right lung.

Dr. Sigoloff testified that an X-ray picture taken on the day plaintiff was injured revealed that he had diaphragmatic pleurisy at that time. Plaintiff was injured shortly after noon on July 14, 1928. Dr. Sigoloff examined him at his office between three and four o'clock on that day. He was asked to describe the conditions he found at that time. His answer was as follows:

"He had a laceration on his right upper thigh about two and a half to three inches long. It required five sutures or stitches; he likewise had some bruises on his right hip, on his right forearm, and on his right face, right side of his face, and his right ankle was swollen, discolored and painful, and he had some tenderness of his right knee. In addition, I noted that his heart was enlarged; he had a lesion which we refer to as aortic insufficiency. At that time he had a blood pressure of one hundred and forty over thirty; that was about all. In addition to that, he complained of pain, rather marked pain, in his right lower chest, particularly when he took a deep breath. An X-ray was taken, and we found that he had what was known as a diaphragmatic pleurisy on the right side; that usually is a result of trauma to the chest or injury to the chest; and it may develop adhesions between the diaphragm, which is muscular, separating the abdominal cavity from the chest cavity, adhesion between the diaphragm and the lining of the lungs, which, upon taking deep breaths, the diaphragm goes down and pulls on this adhesion; that is, the adhesion pulls on the lungs and gives rise to pain. There were no fractures; no fractured ribs."

Later in his testimony Dr. Sigoloff testified that adhesions between the diaphragm and the lining of the lungs were called diaphragmatic

pleurisy. Respondent concedes that diaphragmatic pleurisy would not develop in the few hours intervening between the time plaintiff was injured and the time Dr. Sigoloff examined him on the day of the injury. If, as Dr. Sigoloff testified, plaintiff had diaphragmatic pleurisy on the day he was injured, it was not caused by the injuries he received in the collision.

Respondent, in effect, concedes that the record of Dr. Sigoloff's testimony shows that an X-ray picture was made on July 14, 1928, the date of injury, which showed that plaintiff had diaphragmatic pleurisy at that time, but contends that this X-ray picture was not made until October 30, 1929, more than a year after the injury.

In support of this contention, it is claimed (1) that the court stenographer, in writing up the transcript of the testimony, included Dr. Sigoloff's statement about the X-ray in the same paragraph with the statement of his preliminary findings, and (2) that the testimony of Dr. Jacobson to the effect that "X-ray films of the chest made by Dr. Sigoloff in his office on October 30, 1929, were brought by plaintiff for my inspection" shows when the X-ray about which Dr. Sigoloff testified was made.

A sufficient answer to the first claim is that we cannot accept counsel's statement as to what the record of Dr. Sigoloff's testimony should show as to the date when the X-ray picture about which he testified was made, but we must accept the record as made by the stenographer at its face value. Answering the second claim—the testimony of Dr. Jacobson that plaintiff brought to him X-ray films of the chest made by Dr. Sigoloff on October 30, 1929, does not tend to prove that Dr. Sigoloff did not make an X-ray picture on July 14, 1928. Neither does it tend to prove that the picture delivered to Dr. Jacobson by the plaintiff was the picture about which Dr. Sigoloff testified.

Later in his testimony Dr. Sigoloff testified that the pleurisy which plaintiff had was the result of trauma and that it developed some time after plaintiff was injured.

Plaintiff relied on the testimony of Dr. Sigoloff to establish the claim that diaphragmatic pleurisy which permanently impaired his right lung, resulted from the injuries he received. According to the record the doctor first testified that an X-ray picture taken on the day of the injury showed that plaintiff had the pleurisy at that time. He later testified that the pleurisy resulted from trauma and that it developed after plaintiff was injured. There is no testimony in the record, other than that to which we have called attention, tending to show when the pleurisy developed. The conflict in the doctor's testimony presents the question as to whether or not there was any substantial evidence tending to show that the diaphragmatic pleurisy was caused by the injuries plaintiff received in the collision. We find in the reported cases in this State some statements concerning

conflicting testimony of a party or of a witness to which we cannot give our assent. For instance, in the case of Guthrel v. Slater, 153 Mo. App. 214, 132 S. W. 274, it is said:

"Where the testimony of a party is conflicting with itself, and his testimony is the sole testimony in the case, the question which version of the transaction given by him is correct is for the jury."

Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted. On the other hand, if, in such a case, the conflicting and contradictory statements of the witness are reasonably explained, or if there are other facts and circumstances in the case tending to show which story of the witness is true, and from a fair consideration of all the facts and circumstances in evidence a jury could reasonably determine which statement of the witness should be accepted as true, then the credibility of the witness and the weight to be given to his testimony are questions for the jury.

In the case at bar, the doctor first testified that an X-ray picture taken on the day of the accident revealed that plaintiff had diaphragmatic pleurisy at that time. If so, it did not result from the injuries he received in the collision. The doctor later testified that this pleurisy was not present on the day plaintiff was injured, but that it developed some time later and was the result of trauma. There is no fact or circumstance in the record tending to show which of these conflicting statements is true. We therefore hold there was no substantial evidence tending to show that the diaphragmatic pleurisy which respondent claims permanently impaired plaintiff's right lung resulted from injuries received in the collision.

The other injuries plaintiff received readily responded to treatment and were not permanent.

For the reasons stated, the court erred in submitting the question of permanent physical disability to the jury, for which error the judgment is reversed and cause remanded. All concur, except *Hays, J.*, not voting, because not a member of the court at the time cause was submitted.