WILLIAM M. RAINWATER v. PAUL WALLACE and NORMAN KLEIN, Defendants, EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Garnishee, Appellant.—No. 38518.—174 S. W. (2d) 835.

Division One, November 1, 1943.

*James R. Sullivan* and *Arthur R. Wolfe* for appellant.

1046

*Homer A. Cope, Cope & Hadsell, William A. Pevehouse* and *Walter A. Raymond* for respondent.

BRADLEY, C.—This is a garnishment proceeding in aid of an execution based on a judgment for damages in favor of William M. Rainwater, respondent here, and against defendant Paul Wallace. There was a verdict and judgment in the garnishment proceedings in favor of plaintiff and against the garnishee in the sum of $1484.65, which included interest on the judgment and costs, and the garnishee appealed to the Kansas City Court of Appeals. The majority. opinion of the court of appeals affirmed the judgment, but Judge Shain dissented; held that the majority opinion was in conflict with rulings in certain cited cases of this court and the Springfield Court of Appeals, and the cause was certified to this court. Rainwater v. Wallace et al., 169 S. W. (2d) 450.

Defendant Klein, on and prior to July 17, 1938, was in the tree surgery business in Kansas City, and defendant Wallace was his foreman. Sunday afternoon, July 17, 1938, Wallace, while using, in Kansas City, a truck owned by Klein, collided with an automobile driven by plaintiff. Both plaintiff and his wife, who was with him, were injured, and plaintiff brought suit, in three counts, against both Wallace and Klein to recover damages for loss of services of his wife, to recover for personal injuries to himself, and to recover for damages to his automobile. Plaintiff sued both Wallace and Klein on the theory that Wallace was Klein's agent and servant in driving the truck, and was, at the time, acting in the line of his duties and on a mission for Klein connected with the tree business. The trial court, in the damage suit, directed a verdict in favor of defendant Klein, and plaintiff took an involuntary nonsuit as to him. Verdict in favor of Klein was directed because plaintiff failed to show that Wallace, at the time of the collision, was on a mission for Klein in connection with the tree business. Plaintiff moved to set aside the involuntary nonsuit, but was overruled and he did not appeal. The jury, in the damage suit, returned a verdict in favor of plaintiff and against Wallace in the total sum of $1250. Wallace did not appeal; did not pay the judgment, and the execution above mentioned was issued, and this garnishment proceeding commenced against the garnishee on the theory that a liability policy issued by the garnishee to Klein and on the truck involved covered the accident or collision, and that therefore the garnishee should pay the judgment against Wallace.

As stated, at the time of the collision mentioned, Wallace was Klein's foreman in Klein's tree business, but prior to this garnishment proceeding Wallace claimed that, at the time of the collision mentioned, he was using the truck without Klein's permission and was solely on a mission of his own, and so testified in the damage suit resulting in the judgment against him, and so testified in a separate suit by Mrs. Rainwater against him and Klein. And Wallace made a written statement to the same effect. But in this garnishment proceeding, Wallace, over objection, testified by deposition to the effect that at the time of the collision he *was* using the truck with Klein's consent and *was* on a mission for Klein in connection with the tree business. Wallace's evidence in the garnishment proceeding is set out at length in the majority opinion of the court of appeals to which we make reference.

Garnishee, appellant here, contends: (1) That the issue on the *use* of the truck by Wallace, at the time of the collision, is res adjudicata; (2) that if such question is not res adjudicata, then garnishee says that the evidence is not sufficient to make a submissible [837] issue on the use of the car by Wallace at the time of the collision; and (3) that plaintiff's instruction No. 1 is broader than the pleadings and submitted issues not within the pleadings.

■ Before taking up the assignments, we should dispose of a contention made by plaintiff. It is contended that in order to recover against the garnishee, plaintiff is not required to show that Wallace, at the time of the collision, was using the truck with Klein's permission, *and* that at the time, Wallace was on a mission for Klein in connection with the tree business. Plaintiff argues that, upon a showing that Wallace, at the time of the collision, was using the truck with Klein's permission, then under the omnibus clause of the policy, Wallace was an *insured*. For the purpose of the question now in hand, we shall assume that Wallace, at the time of the collision, was using the truck with Klein's permission. Pertinent provisions of the policy follow:

"Declarations (Insertion of X indicates declaration made as a representation).

1. Name of insured—Norman Kline, D/B as Midwest Tree Experts, 225 Plaza Theatre Bldg., Kansas City, Missouri.

Insured is: (x) Individual; ( ) Partnership; ( ) Corporation. Business or occupation of named insured: Tree experts.

2. Period of Policy—April 23, 1938, at 12:01 A. M. to April 23, 1939, at 12:01 A. M., standard time as to each date at the address of the named insured stated herein.

3. The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto. The letters XXXX shall be inserted in the premium column for any coverage not in force.

5. The purpose for which the automobile is to be used is: ( ) Pleasure and Business; (x) Commercial. . . .

19. By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations; that this policy is issued upon the truth of such representations. . . .

### INSURING AGREEMENTS.

I. COVERAGES—

Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile.

Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because

of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile. . . .

III. DEFINITION OF 'INSURED.'—The unqualified word 'insured', wherever used in coverage A and B and in other parts of this policy, when applicable to these coverages, includes *not only the named insured,* but also any person, while using the automobile, and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business', or commercial, each as defined herein, *and provided further that the actual use is with the permission of the named insured.* . . .

V. POLICY PERIOD, PURPOSE OF USE.—This policy applies only to accidents which occur and to direct losses to the property insured which are sustained during the policy period, while the automobile . . . is owned, maintained and *used for the purposes stated as applicable thereto in the declarations* (italics ours). .

(a) The term 'pleasure and business' is defined as personal pleasure, family and business use.

(b) The term 'commercial' is defined as the transportation or delivery of goods, merchandise, or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in the declarations.''

It will be noted that following the word *declarations,* at the outset of the policy, is the statement, in parenthesis, that the insertion [838] of the letter X indicates declaration made, and it would follow that, absent the.X no declaration is made. Example, in the second sentence of declaration 1, the letter X precedes the word *individual,* but that no X precedes the words *partnership* and *corporation,* which follow the word *individual.* This indicates that the insured was an individual and not a partnership or corporation. And in declaration 5 the X is omitted before the words ''business and pleasure'', but appears before the word ''commercial.''

As appears, insuring agreement III provides that ''the unqualified word .'insured', wherever used in coverages A and B . . . includes not only the named insured, but also any person using the automobile . . . provided that the *declared and actual use* . . . is 'pleasure and business' *or* 'commercial', each as defined herein, and provided further that the *actual use* is with the permission of the named insured'' (italics ours).

Had the insuring agreements ended with III, then it would be reasonable to say that Wallace, under the policy, was an *insured,* provided the use of the truck was with Klein's permission. But the insuring agreements do not end with III. Insuring agreement V provides, as will be noted, that the policy applies only to accidents which occur while the truck was being ''used for the purposes stated as

applicable thereto in the declarations." And it will be noted that declaration 5, when read in connection with the meaning of X before the word commercial, means that the policy applies to accidents only when the truck was being used for commercial purposes. And (b) of insuring agreement V defines commercial as "the transportation or delivery of goods, merchandise, or other materials, and uses incidental thereto, in direct connection with the named insured's business occupation as expressed in the declarations." And declaration 1 gives the named insured's business or occupation as "tree experts."

It is our conclusion that the mere permission of Klein for Wallace to use the truck would not make Wallace an *insured*. The Court of Appeals reached the same conclusion, citing several cases [169 S. W. (2d) 1. c. 453] to which we make reference without citing here.

Is the issue on the *use* of the truck by Wallace, at the time of the collision, res adjudicata? "The taking of a nonsuit amounts to, and has the effect of, a dismissal of the case as to one or all the defendants. 18 C. J. 1145 and 1147. It is not a final disposition of the cause of action on the merits, but is a final termination of the particular suit. The giving of leave to move to set aside the dismissal or nonsuit means that the court, when the nonsuit was involuntary, will later reconsider its action which necessitated the nonsuit and may grant a new trial. The motion to set aside the nonsuit is, in effect, a motion for a new trial. If no motion to set aside is filed, or if filed and overruled, the nonsuit is final at least at the end of the term and effectuates a dismissal of the action", as to the one as to whom the nonsuit was taken. Stith v. J. J. Newberry Company et al., 336 Mo. 467, 79 S. W. (2d) 447, 1. c. 461, 462, and cases there cited. Plaintiff's involuntary nonsuit as to Klein was a final judgment for the purpose of appeal by plaintiff, had he desired to appeal from the order overruling his motion to set aside, State ex rel. Cass County v. Mo. Pac. Ry. Co., 149 Mo. 104, 50 S. W. 278; Coatney v. St. Louis-San Francisco Ry. Co., 151 Mo. 35, 51 S. W. 1036, but it was not a judgment on the *merits* of the issue on the *use* of the truck at the time of the collision, and is, therefore, not res adjudicata of that issue. If that issue, in the situation, became res adjudicata, then plaintiff, after the nonsuit, could not have commenced a new action against Klein and garnishee concedes that a new suit against Klein could have been maintained.

Is the evidence sufficient to make a submissible issue on the *use* of the truck by Wallace at the time of the collision? This question depends principally on the evidence of Wallace in this garnishment proceeding. The principal burden of garnishee's argument on this assignment is not on *what* Wallace said in his evidence, but on his *right* to say it. In his deposition Wallace testified to the effect that, at the time of the collision, he was using the truck with Klein's permission and was on a mission for Klein in connection with Klein's

tree business. As appears, supra, Wallace had, prior to the garnishment, stated and testified to the contrary. Wallace's evidence, in some detail, is set out in the opinion of the court of appeals, and it will not be necessary to state it here.

"Where a party relies on the testimony of a single witness to prove a given issue, [839] and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted. On the other hand, if in such a case, the conflicting and contradictory statements of the witness are reasonably explained, or if there are other facts and circumstances in the case tending to show which story of the witness is true, and from a fair consideration of all the facts and circumstances in evidence a jury could reasonably determine which statement of the witness should be accepted as true, then the credibility of the witness and the weight to be given to his testimony are questions for the jury." Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644, l. c. 647. See also Goslin v. Kurn et al., 351 Mo. 395, 173 S. W. (2d) 79, l. c. 86, and cases there cited. Wallace's explanation for the change in his evidence was to the effect that representatives of the garnishee, prior to the trial of the damage suit, induced him to suppress the truth as to his mission, on the occasion of the collision, so that no judgment would go against Klein.

The court of appeals, majority opinion [169 S. W. (2d) l. c. 454] said, and we agree, that "a grave fraud was perpetrated upon the plaintiff" if Wallace's explanation was true, and that it would be "a travesty on justice to permit the garnishee to escape liability, if this fraud, in fact, was perpetrated on the plaintiff." We rule that it was proper to hear Wallace's explanation, and it was the province of the jury to believe him or disbelieve him. The situation is not comparable to that in Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S. W. 177, and similar cases upon which garnishee relies.

We might say here that Judge Shain's dissent was not based on the theory that what Wallace said in his deposition was not sufficient to make an issue on the use of the truck, if Wallace was properly heard to say it, but the dissent was on the theory that Wallace, in the situation, should not be heard. Also, Judge Shain based his dissent partly on the question involving the pleadings which we presently consider. In his dissenting opinion Judge SHAIN said [169 S. W. (2d) l. c. 460]:

"It stands admitted herein that Paul Wallace, the judgment debtor herein, gave the undisputed testimony in the case, wherein he is the judgment debtor, which resulted in the adjudication that no

relation of master and servant was involved (between Wallace and Klein), and it is a fact that Paul Wallace, the judgment debtor, has not said in his testimony herein that he was on his master's business when he was going to inspect trees. True it is that there are facts stated in his testimony from which the unplead relation can be inferred if you first indulge in the presumption that he was guilty of perjury in the damage suit trial.''

 Did plaintiff's instruction No. 1 constitute reversible error because broader than the pleadings and submitted issues not within the pleadings? The usual interrogatories were submitted, and to each, garnishee answered No.

Sec. 1578, R. S. 1939, Mo. R. S. A., sec. 1578, provides: "In all cases where the answer of the garnishee is denied, the denial shall contain, specially, the grounds upon which a recovery is sought against the garnishee; and the garnishee shall be entitled to a reply, and the issue or issues made up on the denial and reply shall be the sole issue or issues tried, and the issue or issues shall be tried as ordinary issues between plaintiff and defendant." In terms of the ordinary case the denial of the garnishor to the answers of the garnishee is the *petition,* so to speak, in the garnishment case, and the reply of the garnishee is the *answer* to the petition.

In plaintiff's denial of garnishee's answer, he alleged that Wallace was driving the truck with Klein's consent, but did not allege that the truck was being driven on a mission for Klein in connection with the tree business. Instruction No. 1 submitted the question of consent and also required a finding, before plaintiff could recover against the garnishee, that Wallace, at the time of the collision, was on his way to "inspect some trees and shrubbery in the promotion of the tree surgery business of his employer, Norman Klein." Garnishee did not object to the evidence of Wallace tending to show that he was on a mission for Klein, at the time of the collision, on the ground that such was not pleaded. The objection was on the ground that the issue **[840]** on the *use* of the truck at the time was res adjudicata. The objection made was no objection at all, so far as concerns the question now in hand. In the situation plaintiff's denial will be considered as amended to include the absent allegation. Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723, l. c. 726, and cases there cited.

The judgment should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.