Anna Mae STEPHENS, Plaintiff-Appellant,

v.

Guy A. THOMPSON, Trustee, Missouri Pacific Railroad Company, a Corporation, Defendant-Respondent.

No. 45084.

Supreme Court of Missouri.

Division No. 1.

Sept. 10, 1956.

Anthony P. Nugent, Kansas City, for plaintiff-appellant.

Harold L. Harvey, St. Louis, Johnson, Lucas, Bush & Gibson, Hilary A. Bush, Floyd R. Gibson, Fred A. Murdock, William A. Cameron, Kansas City, for defendant-respondent.

HOLMAN, Commissioner.

Action for the wrongful death of plaintiff's husband who was instantly killed on the morning of February 16, 1953, when the car he was driving was struck by defendant's train at a crossing in Archie, Missouri. The jury verdict was for plaintiff in the sum of $11,500. Upon proper motion the trial court set aside the verdict and entered judgment for defendant. In the alternative the court granted a new trial, but the view we take of the case makes it unnecessary for us to consider the action of the court in that regard. Plaintiff has duly appealed.

The case was submitted solely under the humanitarian rule as follows: "that defendant, his agents, servants, and employees, saw, or by the exercise of ordinary care could have seen, plaintiff's deceased husband upon said crossing, and in a position of imminent peril, if so, in time thereafter, with the means and appliances at hand, and with safety to themselves and equipment, to have stopped said train, or slackened the speed thereof, and thereby avoided the collision * * *." The sole question for our determination is whether plaintiff made a submissible case in the respects indicated.

It should be noted at the outset that all of the evidence relating to this casualty was produced by plaintiff and consisted of the depositions of four members of the train crew. We will state the evidence in the light most favorable to plaintiff.

The train involved was a fast freight consisting of three diesel locomotives and 62 cars, 30 of which were loaded. It was en route from Kansas City to Nevada, Missouri. At the time in question it was approaching the town of Archie from the north at a speed of from 45 to 50 m. p. h. Deceased was alone in a 1933 Chevrolet and was driving westwardly on a highway which crossed the defendant's tracks in the north part of Archie.

The most complete version of the occurrence was given by Joseph A. Smith, the head brakeman, who was seated on the left or east side of the cab. When the train was a quarter of a mile to the north he saw the car in question approaching the crossing. It stopped, momentarily, with its front end almost at the crossing sign and then started forward again. At this point the witness mentioned to the engineer or fireman that the car had started, although, "if he had kept on moving he would have had ample time to clear the crossing." However, the car stopped (apparently stalled) "right on the center of the track." Smith "yelled to the engineer to stop and he threw it in emergency, but I doubt whether he heard me because he already had the air set * * *. He could see from his side then, and as soon as he saw the car stopped, the air went in emergency." When the car stopped deceased "tinkered

with a gadget a little bit" and then got out of the car and had started toward the west when the train struck the car.

According to Smith, when the car stopped on the tracks the train was "getting pretty close," less than an eighth of a mile (660 feet) away. The train had not slowed enough to be noticeable before the collision. It traveled at least a quarter of a mile beyond the crossing before it was stopped.

The conductor was in the caboose and did not see the accident. His testimony is not helpful in determining the issues before us. E. E. Perkins, the fireman, was on the engine but did not see the collision. He stated, however, that he heard the brakeman yell something about, "he is stopped on the crossing," and "the same instant he said that, I heard the air go in emergency. Seems like they both happened at exactly the same time." He testified further that he glanced out of the window and at that time "we were about 150 feet from the crossing."

The engineer, Mr. Fraise, testified that this train, traveling from 45 to 50 m. p. h., could be stopped in a distance of between a quarter and a half mile; that he heard the warning of the brakeman and saw the car on the crossing at about the same time and applied the emergency brake. He stated that the brakes were in good working order and he considered that he made a good stop.

The question arises as to the effect that may be given to certain other testimony of the engineer which was conflicting and self-contradictory. On the issue as to the distance of the engine from the crossing when the brakes were applied, he in one place stated 800 to 1,000 feet, and later, without any explanation for the change, stated 500 or 600 feet. On the question of how far the train traveled after the brakes were applied, he testified as follows: "Q. After you first applied the brakes, do you have any judgment as to how far your train moved before it stopped? A. Somewhere between five and six hundred feet, and it could be a thousand feet. Now I don't know the exact distance." On the contrary, he had previously stated that the train had gone "a little over a quarter of a mile" past the crossing after striking the car. If we accept his minimum estimate of 500 feet before reaching the crossing as the point where the brakes were applied, it will be seen that in one place he is estimating that the train ran 1,820 feet after the brakes were applied, and in another place makes the estimate as low as 500 or 600 feet. The witness made no effort to explain this wide variance or conflict. Actually, plaintiff concedes in her brief that the train traveled a quarter of a mile past the crossing after the collision.

We do not think that plaintiff is entitled to the most favorable inferences that may be drawn from this kind of testimony. "Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted." Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647. See also, Rainwater v. Wallace, 351 Mo. 1044, 174 S.W.2d 835. In the instant case there was other testimony on the overall issues involved but the engineer was the only witness relied on by plaintiff to prove certain favorable estimates of distance as heretofore indicated. We recognize that the testimony in question is all a matter of estimates. However, the estimates are so widely divergent that it would seem they should be classified as contradictions rather than mere variances. We think the foregoing authorities are therefore applicable and that said testimony is without probative value and does not constitute substantial evidence.

■ Under the humanitarian doctrine, the defendant's agents owed decedent no duty until he was in a position of imminent peril. Plaintiff contends that decedent was in such a position when he started forward after the car was momentarily stopped. Defendant presents the contrary argument that decedent was not in imminent peril until his car stalled on the tracks.

■ Imminent peril, within our humanitarian doctrine, means certain, immediate and impending peril. Hendrick v. Kurn, 352 Mo. 848, 179 S.W.2d 717. After deceased momentarily stopped the car and then started forward there is no question but that he intended to proceed across the tracks. This, however, does not indicate that he was in a position of imminent peril. Although there was no evidence of the speed of the car, nor the exact distance to be covered before he cleared the crossing, the only eyewitness to this part of the occurrence stated that deceased had ample time to clear the crossing if the car had continued moving. This conclusion is rather strongly corroborated by the fact that after the car stalled, deceased had time to "tinker" with something in the car and then get out of the vehicle and start west before the collision occurred. Since the evidence indicates that deceased had ample time to cross in safety we rule that he was not in imminent peril until the car stalled on the tracks. Phillips v. St. Louis-San Francisco Ry. Co., 337 Mo. 1068, 87 S.W.2d 1035.

It follows from the foregoing that defendant's crew owed the decedent no humanitarian duty until his car stalled on the track. It may be observed that in this case there is no question of constructive notice, as it is undisputed that the brakeman was watching the car and had actual knowledge the instant the car stopped on the tracks. At that time it became the duty of the crew to exercise ordinary care, with the means at hand and with safety to themselves and others, to avert the impending collision.

■ The evidence is that the train could be stopped in a distance of from a quarter to a half mile. The minimum indicated is 1,320 feet. The estimates (which we may consider) of the distance of the engine from the crossing at the time the car stalled vary from 150 feet to less than 660 feet. It is therefore obvious that the train could not have been stopped in time to have avoided the collision.

■ It remains for us to determine whether the speed of the train could have been sufficiently slackened, after the car stalled, so that decedent could have escaped from the path of the train. There is no evidence as to how long after application the brakes would "take hold" except the testimony of the engineer that the brake "takes hold" in two or three seconds after he takes his foot off the "dead-man's" pedal. Moreover, there is no evidence as to how rapidly the speed of a train of this description could be slowed after application of the emergency brake. In other words, there is no evidence in this record to demonstrate that in 660 feet or less the speed of this train could have been diminished more effectively than actually was done. The burden of proof was upon plaintiff to offer evidence tending to show these facts. A jury cannot be permitted to base a verdict upon conjecture or mere surmise. We rule that no submissible case was made on the issue of failure to slacken the speed of the train. Wolverton v. Kurn, 348 Mo. 908, 156 S.W.2d 638; Taylor v. Missouri, K. & T. R. Co., 357 Mo. 1086, 212 S.W.2d 412; Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738.

While we do not base our decision thereon, we observe that under the particular facts of this case (all evidence being offered by plaintiff), what actually was done may well be considered as a strong indication of what could have been done. In other words, the evidence indicates that the brakes were in good working order and were applied immediately after the car stalled, and

yet this train did not slacken enough to permit decedent to escape and continued a quarter mile past the crossing before being stopped. This would strongly tend to indicate that nothing could have been done to avert the casualty after decedent was in imminent peril.

Plaintiff having failed to make a submissible case, the trial court properly set aside the verdict and judgment for plaintiff and entered judgment for the defendant. The judgment is accordingly affirmed.

VAN OSDOL, C., concurs.

COIL, C., concurs in result.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.