Arthur HINRICHS, a Minor, by Hans Hinrichs, His Father and Next Friend, Respondent,

v.

Albert YOUNG, Appellant.

No. 51392.

Supreme Court of Missouri, Division No. 1.

June 13, 1966.

Gray & Sommers, Charles E. Gray, St. Louis, for respondent.

Derrick & Holderle, St. Louis, for appellant.

HIGGINS, Commissioner.

Action for damages for personal injuries in which defendant appeals from verdict and judgment for plaintiff for $20,100.

The action arose from a collision on November 21, 1961, in St. Louis, Missouri, between a motor bicycle being operated southwardly on Lawrence Avenue by plaintiff and a school bus being operated eastwardly on Flad Avenue by defendant. At their intersection Flad Avenue is approximately 30 feet wide and Lawrence is 27 to 30 feet wide. The bus, a 1960 Model GMC,

was 27 feet long and seven feet wide and in good condition. Upon arriving at the intersection the bus stopped with its front bumper approximately three feet east of the west curb of Lawrence Avenue. While the bus was so stopped a laundry truck passed through the intersection northwardly on Lawrence. The bus then proceeded in low gear at what witness Joseph M. Hughes termed "walking speed, about three miles an hour." Mr. Hughes, a bus driver for Bi-State Transit Authority, had stopped to the rear of the school bus. He testified that at the same time the bus started plaintiff's bike entered the intersection going south on Lawrence, " * * * and he was at a half left position like he was sliding. * * * He would be at a southeast position. He was in a slide—at an angle, dog fashion. * * * He stayed in a half left position most all the way—I mean, it was a slide into where—to the point of the contact with the bus. * * * As if he was trying to stop to avoid this." The bus continued at three miles per hour and the vehicles collided at the center of the intersection. The bike struck the left side of the bus at a point behind the bus driver's seat approximately 10 feet from the front of the bus and at a point about a foot above the bottom of the body of the bus. Mr. Hughes estimated the bike's speed at seven to 10 miles per hour, and testified that the bus going three miles per hour could have been stopped safely in two and a half or three feet. The police officer testified that the bus traveled 87 feet 8 inches from the place where debris was found just east of the center of the intersection and that plaintiff was lying about 32 feet away from the debris. There were no skid marks.

According to defendant the accident occurred in daylight and the streets were dry. Although he did not see plaintiff, he could see about a block to his right and left from where he was stopped at the intersection. He placed his speed at approximately five miles per hour and when he felt the thud of impact he applied the brakes on his bus

and " * * * it stopped immediately." He thereafter pulled out of the intersection to the place noted by the officer.

Plaintiff was 15 years of age when the collision occurred and he had no memory of the details of the collision. As stated in appellant's brief, plaintiff received serious and permanent injuries to his body, and plaintiff had evidence to show brain damage, eye injury, and lacerations of the limbs requiring skin grafts and involving keloid scarring.

The case was submitted to the jury under the humanitarian doctrine by the use of MAI 17.14 which hypothesized failure to stop as negligence. Appellant says this was error because there was no evidence from which a jury could determine when and where plaintiff came into imminent peril (now known as immediate danger under MAI), nor of what action defendant thereafter could have taken to prevent the collision.

Appellant reminds that "[u]sually a humanitarian negligence case must fail when the plaintiff or his vehicle comes to an intersection last and runs into the side of the other vehicle," Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W. 2d 296, 302[13]; that "[t]he first and basic fact of liability under the humanitarian doctrine is a position of imminent peril," Lane v. Wilson, Mo.App., 390 S.W.2d 943, 947[3], Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 364[8]; that " '[t]he peril truly must be imminent * * *; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient,' " Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583[13]; that "[d]efendant's duty does not arise 'before the plaintiff is actually in a position of imminent peril,' " and that defendant then "had the present ability with the means at hand to have averted the impending injury without injury to himself or others," Davis v. St. Louis Public Service Co., Mo., 316 S.W. 2d 494, 497[3][6]. He cautions also that even though plaintiff is entitled to the bene-

fit of all favorable inferences warranted by the evidence, the evidence to support his submission must be substantial evidence, and a case which leaves one or more of the essential elements to speculation or conjecture is not for the jury. Moore v. Ervin, Mo., 374 S.W.2d 142, 149[3]; Lane v. Wilson, supra, l. c. 950[11] of 390 S.W.2d; Paydon v. Globus, Mo., 262 S.W.2d 601, 603[1]; Yarrington v. Lininger, Mo., 327 S.W.2d 104, 109[7].

Under the evidence the jury reasonably could have found that plaintiff was in or entering a position of immediate danger at the time the motorbike entered the intersection. At that time and place he was trying to stop, was sliding in a southeastwardly direction and was obviously out of control and unable to stop prior to collision with defendant's bus in the center of the intersection. And such position of danger reasonably could have been found to have commenced when the bus moved forward from its stopped position. The front of the bus was approximately three feet east of the west curb line of Lawrence Avenue when it started forward, and Lawrence being 30 feet wide, gave defendant 12 feet in which to stop prior to the collision in the center of the street. According to Mr. Hughes the bus was traveling at three miles per hour and could have been stopped safely in two and a half or three feet; defendant stated his speed to be five miles per hour and that he stopped "immediately" after the collision, and judicial notice has been taken that a loaded vehicle traveling two to five miles an hour may be stopped "almost instantly." Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, 10[9]; Pettus v. Dubman, Mo.App., 389 S.W.2d 373, 375[6–8]. Thus, the jury reasonably could have found also that defendant had the means by which to stop short of the center of the road and so to have avoided collision with plaintiff. Despite his statement that he looked and did not see plaintiff, the evidence shows that defendant, in his stopped position, had an unobstructed view in plaintiff's direction

for at least a block, in which case defendant "must be held to have seen what looking would have revealed," Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548, 553[7], Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 546[5], Hildreth v. Key, Mo.App., 341 S.W. 2d 601, 606[5], which in this case was plaintiff out of control of his motorbike. Accordingly, it was proper for the jury to determine when and where plaintiff entered into immediate danger and whether defendant knew, or by using the highest degree of care could have known, of plaintiff's immediate danger in sliding across the intersection out of control in time thereafter to have avoided the collision by stopping. Harris v. Rowden, Mo., 305 S.W.2d 25, 29[4]; Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 39[5]; Daniels v. Smith, Mo., 323 S.W.2d 705, 709, 710[4, 5].

Appellant, relying upon Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33, 35[4], in which plaintiff's danger zone was very narrow because he was fully aware of his predicament and admittedly able to extricate himself, and Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 976[5–8], in which plaintiff gave no indication that he was not going to cross in front of defendant, argues that plaintiff did not come into peril when he entered the intersection "for at that time he could have swerved either to the right or left and avoided the collision or could have speeded up and gone on through the intersection ahead of the bus or he could have stopped." There are no transcript references to support this contention, and the evidence that plaintiff was sliding through the intersection at a 45° angle is contrary to any suggestion of control sufficient to enable him to stop, swerve, or accelerate in order to extricate himself from danger.

Appellant argues that plaintiff's case must stand, if at all, on the testimony of witness Hughes, and that his testimony consists of conflicting statements which create a situation violative of the principle of law that where a party relies on the statement of a single witness to prove an issue and that witness's testimony is contradictory with no explanation of the contradiction or other evidence pointing to the true version, the jury may accept neither version of it. Stephens v. Thompson, Mo., 293 S.W.2d 392, 394[1], quoting Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644. See also Corder v. Pruitt, Mo., 361 S.W.2d 659; Begley v. Connor, Mo., 361 S.W.2d 836, 839[2]. After testifying on direct, cross, redirect, and recross-examination that defendant was stopped with the front of his bus approximately three feet east of the west curb of Lawrence Avenue and that he proceeded at the same time plaintiff entered the intersection, he answered on further recross-examination that "the bus hadn't quite maybe hit the center line of Lawrence yet, at the same time I seen the boy." Appellant says this answer produced the conflict destructive of the witness's testimony; however, upon further direct examination he stated that he meant to testify as before that he "saw the boy at about the same time the bus started up," and upon still further recross-examination he clarified and explained his testimony stating, "At the same time I seen the boy was the same time that the bus had started to proceed from its stop at the cross walk. In other words, the bus started up and the boy was coming." He continued upon yet further recross-examination with additional testimony consistent with the theory upon which plaintiff's case stands: "Q (Mr. Derrick) All right. Where was the front of the bus when you first saw the boy? A Oh, that's when the bus was still maybe three or four feet from the curb, the west curb of Lawrence." Under these circumstances it is clear that the witness misunderstood the cross-examiner's question in the single instance said to be contradictory because he immediately rehabilitated himself and continued to testify to facts consistent with his previous testimony sup-

portive of plaintiff's case. Such testimony sufficiently explained any contradiction so that any doubt of the credibility of the witness and weight of his testimony was for the jury to determine. Adelsberger v. Sheehy, supra, l. c. 647[7] of 59 S.W.2d.

Error is charged in the failure to strike the estimate by Mr. Hughes of the speed of the motorbike because he said on re-cross-examination that it was a guess.

■ Use of "guess" is not necessarily destructive of a witness's testimony if it appears, for instance, from his whole testimony that the witness intended to express an opinion or judgment. Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 405[8, 9]; Leathers v. Sikeston Coca-Cola Bottling Co., Mo.App., 286 S.W.2d 393, 396 [2–4]; Wood v. St. Louis Public Service Co., Mo., 228 S.W.2d 665, 667[4], 17 A.L. R.2d 868. And in this case the testimony in question could not be prejudicial to defendant because it has been demonstrated previously that the jury reasonably could have found plaintiff was in immediate danger when he entered the intersection at the time defendant's bus started forward and that defendant could thereafter stop in time to avoid the collision. This was the submission of plaintiff's case and his speed was not part of or material to the submission.

Appellant says that allowing Dr. Moore, on behalf of plaintiff, to testify from portions of an electroencephalogram prepared by another doctor erroneously invaded the province of the jury and permitted one expert to base his opinion on the opinion of another expert. He cites Parrott v. Kisco Boiler & Engineering Co., Mo.App., 332 S.W.2d 41, where one expert was asked to give an opinion on the correctness of another expert's opinion; Hornberger v. St. Louis Public Service Co., Mo., 353 S.W.2d 635, holding it improper for one expert to base his opinion on the opinion of another unless it be in evidence

and included as an assumption in a hypothetical question; Baumhoer v. McLaughlin, Mo.App., 205 S.W.2d 274, holding it objectionable for a doctor's opinion to be based on another's X-ray findings without viewing the X rays himself; Hayes v. Equitable Life Assurance Society, 235 Mo. App. 1261, 150 S.W.2d 1113, holding it error for physicians to express opinions on hospital records not in evidence.

■ The record does not support appellant's charge and the situations in the above cases are thus not applicable. Dr. Moore testified that he examined plaintiff and sent him to Washington University for an electroencephalogram. The tracing was made at Dr. O'Leary's Laboratory and portions of the film strip were mailed to Dr. Moore which became Exhibit 5 in evidence. He likened the strip to a representative heart tracing, admitted that doctors might differ in their readings, and gave his opinion that the strip in evidence was representative of the whole tracing. He read it as showing "mixed dysrhythmia with paroxysmal trends and a left temporal slowing." There was another electroencephalogram in evidence which had been run at City Hospital, and he read it as showing "slow and fast dysrhythmia." In addition, Dr. Moore made a physical examination of plaintiff in which he found brain damage, and the hypothetical question put to him resulting in his opinion as to injuries sustained made no reference to electroencephalograms. In such circumstances Dr. Moore was neither relying on another's opinion nor on an electroencephalogram edited by another, and the vices suggested by appellant did not occur. The only use made of the tracings was that of a *reading* by the doctor which is akin to the more familiar practice of one doctor interpreting X rays taken by someone else. Under these circumstances there was no abuse of the court's discretion in the admission of evidence. Chailland v. Smiley, Mo., 363 S.W.2d 619, 630[24], 5 A.L.R.3d

288; Snyder v. Jensen, Mo., 281 S.W.2d 802, 816[16].

The judgment is affirmed.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.