Albert J. WIEDMAIER, Appellant,

v.

ROBERT A. McNEIL CORPORATION and National Union Fire Insurance Company, Respondents.

No. WD 38118.

Missouri Court of Appeals, Western District.

Oct. 14, 1986.

---

Edward F. Ford, III (Ramsey, Ford, El-liott & Hiles, of counsel), Kansas City, for appellant.

Michael A. Childs (Turner and Boisseau, of counsel), Kansas City, for respondents.

Before BERREY, P.J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Appellant was denied workers' compensation for a claimed work-related heart attack by an administrative law judge, whose award was affirmed by the Labor and Industrial Relations Commission. In his first point, he contends that the Commission erred in finding that his injury was not causally related to the accident, series of accidents or occupational disease, because it was contrary to the overwhelming weight of the evidence in that the Commission improperly discounted significant portions of the testimony. In his second point, appellant contends that the Commission did not apply the proper test for awarding compensation in that he needed to show only that the work or job triggered the heart attack.

Appellant worked, doing menial tasks, for the McNeil Corporation at its apartment complex for about two years prior to suffering his heart attack on November 10, 1983. He testified that in the morning of November 10, he had pulled out and lifted a dishwasher in an apartment unit during which he had a feeling of indigestion, and thereafter he worked on a furnace, at which time he was still experiencing indigestion. At about 12:30 p.m., he left for lunch and drove to a nearby K–Mart store. The pain kept getting worse and upon arriving at the K–Mart parking lot, he decided to go to a doctor who took an EKG and told him that he was in the process of having a heart attack. He was transported to Trinity Lutheran Hospital where he was diagnosed as having an acute superior and lateral lower myocardial infarction, and was then admitted for treatment which was undertaken by cardiovascular disease specialist, Dr. Michael A. Montgomery. According to the doctor, there was no indication that appellant had any symptoms that suggested a previous heart attack.

The hospital record history in pertinent parts is: "This is a fifty-two year old maintenance worker who is presently living with Velma, his companion. Apparently, he has been somewhat exhausted over the last couple of days, especially in the later hours. Also, he stated he has been under increased pressure at work for the last two months. He states that today, about twelve o'clock, he noted some pressure underneath his upper sternum that was radiating across the front of his chest, but not going to his arms and not going to his neck. He states that this occurred while he was driving his van. He went into the cafeteria and had some lunch, that the pain persisted. He, therefore, stated he went to his doctor's office to have his blood pressure checked. * * * The patient has not had any symptoms similar to this in the past and never had any trouble, heart trouble in the past."

Appellant, at the time his history was taken, or any time thereafter (except at trial), did not state that he had moved a dishwasher earlier in the day and experienced a tightness. Nor did he give his doctors any information concerning harassment from his supervisor, Betty Lewis, which he contends caused him stress. None of these matters were contained in

appellant's claim for compensation, which alleged only as to how injury occurred, cause and work employee was doing for employer at the time: "Employee was doing routine maintenance work including working on a furnace at the apartment complex in which he was employed when he suffered chest pains and resulting heart attack." The report of injury to the Workers' Compensation Division stated: "Heart attack brought on by stress and tension of the job."

There was evidence of appellant's previous physical condition, none of which related to any direct heart trouble. He had a long history of hypertension, of passing out and epileptic type grand mal seizures. In 1982 he had an intracerebral hemorrhage diagnosed as an infarct, secondary to hypertension. He had a history of renal vascular disease and blood flow to both kidneys. He had extensive hypertension workups at the V.A. Hospital over several years and had been diagnosed as having arteriosclerotic plaque formation in the renal arteries, a long history of gout and a grand mal seizure at home on September 4, 1983.

Dr. Montgomery testified, by deposition, as to his opinion as to causation of appellant's heart attack, as follows: He was asked to assume that about 10:30 a.m. on that day, appellant had his heart attack; that in the process of pulling a 100 pound dishwasher from under a counter, turning it and lifting it on its back, he experienced pain as pressure in his chest and indigestion which continued until he saw his doctor at about 12:45 p.m., who determined that he was suffering a heart attack, did he have an opinion, based upon a reasonable medical certainty, whether the heart condition or heart attack was triggered by the lifting and turning of the dishwashing machine, and he answered, "Yes, I believe it could." He expanded the basis for his opinion, "[T]hat we do know that that type of physical stress can increase the amount of oxygen demanded by the heart and that that type of stress can, in fact, precipitate the closure of an already existing coronary artery lesion and it could lead to myocardi-

al infarction or thrombus in the coronary artery." He also answered that assuming all of the facts recited and the preexisting conditions (above set forth) his opinion would be the same, nor would the fact that the attack occurred later while he was driving his van change his opinion. Dr. Montgomery also opined (after an objection was sustained) that mental stress, produced upon appellant by harassment from his supervisor, could contribute to the development of pain in the heart.

Dr. Montgomery testified further: "What exactly causes the thrombus (blood clot) to form one time and not at other times, we don't know", and as to coronary arteriosclerosis, "We're sitting on a time bomb ... and what lights the fuse, we don't know", and "No matter where he was that day, because of the nature of his disease he was a set-up for a heart attack ... what precipitated it that particular day and which factor played the greatest role, I don't know."

The matter of the probative value of the testimony of a expert medical witness that a physical condition "might or could" have been caused by prior events has been considered in a number of cases. In *O'Leary v. Scullin Steel Co.*, 303 Mo. 363, 260 S.W. 55 (1924), there was an issue of whether an arm bone infection was caused by an injury to a thumb or a boil which developed. At page 61, the court said, "It (the jury) could not logically find the cause from the expert testimony if the rule in question is applied to restrict expert opinion to what might or could result from the injury, since that does not necessarily go further than a possibility, and a mere possibility does not satisfy the burden of proof." In *Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644, 646[2, 3] (1933), the court cited the O'Leary case and said, "The burden was on the plaintiff to show the cause. Evidence that the condition might or could have been caused by either injury or disease without any substantial showing as to which of the possible causes did produce the condition, furnishes no basis from which a jury could determine the cause." In *Kimmie v. Ter-*

*minal R.R. Ass'n of St. Louis,* 334 Mo. 596, 66 S.W.2d 561 (1933), two doctors answered affirmatively to questions put to them as to whether a condition they found (sarcoma) might, could or would result from a fall. The court held "[T]his evidence was too insubstantial and uncertain to justify finding that the fall caused the tumor. It left the whole matter to speculation and conjecture." The court went on to say, "We do not hold, however, as defendant contends, that it is improper to ask an expert witness if something might, could, or would produce a certain result. [Citing authority.] Where there are *other facts which tend to show an accident caused a certain condition,* the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts." *Id.* p. 565. [Emphasis added.] See, for example, *York v. Daniels,* 241 Mo.App. 309, 259 S.W.2d 109, 122 (1953), where a doctor's testimony that treatment given by a chiropractor "might" or "could" have produced the injury found in the meninges and spinal cord was admissible where there was much other evidence from which the jury could have found negligence on the part of defendant and the autopsy report practically eliminated everything other than the injury in that part of the spine adjusted by the chiropractor.

In this case there were no other facts other than those contained in the hypothetical question put to Dr. Montgomery which tended to show that the lifting and turning of the dishwasher caused appellant's heart attack. Thus, his opinion that it could have caused the heart attack rests upon speculation, surmise and conjecture, and the Commission, in adopting the findings of the administrative law judge, did not err in so ruling.

Even if Dr. Montgomery's opinion had been more precise as to causation, and thus admissible, that would not end the matter. In *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87, 89 (Mo. banc 1983), it was said, "It is probable that in most cases of heart attack on the job, the claimant can produce evidence of job relatedness. But the trier of fact, as in this case, must be persuaded of this essential finding." Here, the trier of the fact had before him appellant's claim, his history given at the hospital, and his testimony given in deposition and at trial, and it was concluded, "Indeed, the testimony of the claimant and all of the evidence adduced in his behalf is so fraught with contradictions, inconsistencies, speculation and surmise both as to the alleged accident, series of accidents and occupational disease and as to causal relationship, that said testimony is totally unworthy of belief and I give it no credibility." As was said in *Matthews v. Roadway Express, Inc.,* 660 S.W.2d 768, 769[1–4] (Mo. App. 1983), citing *Petersen v. Central Pattern Co.,* 562 S.W.2d 153, 155 (Mo.App.1978) "[which] also holds that the commission is charged with the responsibility of passing upon the credibility of all witnesses and may disbelieve testimony of a witness even if no contradictory or impeaching evidence appears."

The judgment is affirmed.

All concur.