**MISSOURI REAL ESTATE COMMISSION, Appellant,**

v.

**Thomas W. STEGER and Realty Exchange of Kansas City, Inc., Respondents.**

**No. 58431.**

Supreme Court of Missouri, En Banc.

May 13, 1974.

John C. Danforth, Atty. Gen., Leland B. Curtis, Harvey M. Tettlebaum, Daniel P. Card, II, Asst. Attys. Gen., Jefferson City, for appellant.

Martin Anderson, Kansas City, Michael P. Riley, Carson, Inglish, Monaco & Coil, Jefferson City, for respondents.

FINCH, Judge.

Pursuant to § 161.272,[1] the Administrative Hearing Commission (hereafter Hearing Commission) held an evidentiary hearing on a complaint filed with the Missouri Real Estate Commission (hereafter Real Estate Commission) which sought revocation or suspension of respondents' real estate brokers licenses on the basis of alleged violations of the provisions of § 339.100.[2]

---

1. Unless otherwise indicated, all statutory references are to RSMo 1969, V.A.M.S.

2. The portions of that section with which we are concerned on this appeal are as follows: "339.100. *Power to suspend or revoke licenses.* The commission may upon its own

The Hearing Commission made findings, conclusions and recommendations, after which the Real Estate Commission entered an order suspending for six months the real estate brokers licenses held by respondents herein.

Thereafter, pursuant to Art. V, § 22, Mo.Const., V.A.M.S., and § 536.140, the implementing statute, judicial review was sought in the Circuit Court of Cole County. That court reversed the findings and decisions of the Hearing Commission and the order of the Real Estate Commission suspending respondents' brokers licenses. An appeal was taken by the Real Estate Commission to the Missouri Court of Appeals, Kansas City District, which affirmed. We then ordered the case transferred to this court and we now decide it as though here on direct appeal. We reverse and remand with directions.

█ At the outset we note the well established rule that judicial review of administrative decisions pursuant to § 536.140 is such that " * * * We may not substitute our judgment on the evidence for that of the Commissioner and we may not set aside his decision, unless it is not supported by competent and substantial evidence on the whole record, or it is not authorized by law, is arbitrary, capricious or involves an abuse of discretion. State ex rel. Favazza v. Ketchum, Mo., 367 S.W.2d 542, 546 [2, 3]; Pinzino v. Supervisor of Liquor Control, Mo., 334 S.W.2d 20, 26 [4]; Baker & Theodore, Inc., v. Quinn, Mo.App., 400 S.W.2d 477, 479–480 [1]." Tom Boy, Inc. v. Quinn, 431 S.W.2d 221, 225 (Mo. banc 1968). We apply that rule in our review herein.

The decision of the Hearing Commission included these findings of fact:

"Respondent Thomas W. Steger is a real estate broker licensed by petitioner, and is also president of Realty Exchange of Kansas City, Inc. (hereinafter referred to as Realty Exchange). Respondent Realty Exchange is a Missouri corporation, and is also licensed by petitioner as a real estate broker."

"On July 7, 1968 Joseph Wilkins, Jr. of Kansas City, Missouri telephoned Realty Exchange and advised he was interested in buying a house. The same day Robert Greenwell, salesman for respondents, showed houses to Wilkins and his wife. The Wilkins told Greenwell they would like to buy one of the houses, at 2118 East 50th Street, but needed to sell the house they were living in at 4449 South Benton, as they could not afford to make two house payments. Greenwell referred the Wilkins to respondent Steger, who had Greenwell prepare an Offer to Purchase Real Estate, which the Wilkins signed. Written into the document were the words: 'R.E.K.C. to assume liability of home located at 4449 S. Benton as of Sept. 1, 1968.'

"On July 24, 1968 Wilkins met with respondent and Greenwell and signed a Real Estate Contract to buy the house at 2118 East 50th Street. The contract was conditioned upon Wilkins obtaining a Federal Housing Administration (FHA) insured loan in the amount of Thirteen Thousand Five Hundred Dollars ($13,500). At the meeting respondent told Wilkins that the Mid-America Mortgage Company would assume liability on

motion, and shall upon written complaint filed by any person, investigate the business transactions of any real estate broker or real estate salesman and shall have the power to suspend or revoke any license obtained by false or fraudulent representation or if the licensee is performing or attempting to perform any of the following acts or is deemed to be guilty of:

"(1) Making substantial misrepresentations or false promises in the conduct of his business, or through agents or salesmen or advertising, which are intended to influence, persuade or induce others;"
  * * * * *
"(7) Any other conduct which constitutes untrustworthy or improper, fraudulent or dishonest dealings, or demonstrates bad faith or gross incompetence;"

Wilkins' house at 4449 South Benton. The same day Wilkins and respondent met with Orson Abbott, President of Mid-America Mortgage Company. Abbott's office was in the same building as respondent's, and Steger was a vice-president of Mid-America Mortgage Company at the time. Abbott and the Wilkins signed a typewritten Addendum to the Real Estate Contract, which stated:

'In connection with the above transaction it is hereby agreed by all parties that MID AMERICA MORTGAGE COMPANY will assume liability of buyers home located at 4449 South Benton as of September 1, 1968. Buyers agree to repair all screens on said property and patch the living room and kitchen ceilings.'

"On July 29 the Wilkins signed a firm commitment for mortgage insurance with the FHA. The commitment stated in part:

'A note and mortgage described above or as modified below will be insured under the National Housing Act provided one of the mortgagors will be an owner-occupant and all conditions appearing in any outstanding commitment issued under the above case number and those set forth below are fulfilled.'

Typed on as an additional condition was the following:

'Submit evidence prior to insurance that mortgagor has been released from all liability under outstanding mortgage on property at 4449 South Benton, Kansas City, Missouri, or consent to substitution of mortgagor, FHA Form 2210, be approved and evidence furnished that the property has been conveyed to and the mortgage obligation assumed by the substitute mortgagor; except when the mortgage is insured under escrow commitment procedure; or evidence is submitted that the property is being conveyed to an owner-occupant.'

"On July 30, 1968 the Wilkins signed a Missouri Warranty Deed deeding the property at 4449 South Benton to Verries Hall. The deed was notarized by Carolyn Abbott who is the wife of Orson Abbott, and warranted that the property was free and clear of any incumbrance. The following day Verries Hall signed an affidavit that 'she has purchased the property located at 4449 South Benton, Kansas City, Missouri and will be an owner-occupant.' Respondent testified that Verries Hall was a welfare recipient whose house was being condemned. Verries Hall subsequently occupied the house at 4449 South Benton. Wilkins made his last payment on this house in August, 1968 to City-Wide Mortgage Company.

"Thereafter, in September, 1968 the Wilkins moved into the house at 2118 East 50th Street and began making house payments on this house. In November, 1968 the City-Wide Mortgage Company, mortgagee of the house at 4449 South Benton, telephoned the Wilkins and advised that they were delinquent on house payments. Mrs. Wilkins called respondent, and he stated that there was nothing to worry about.

"In December, 1968 the Wilkins received a letter from City-Wide Mortgage Company demanding house payments for the 4449 South Benton property. Mrs. Wilkins called respondent and read him the letter. Respondent told Mrs. Wilkins that in some cases the previous owners of a house are billed by mistake and that she had nothing to worry about. In March, 1969 City-Wide Mortgage Company foreclosed on the property at 4449 South Benton and the property was subsequently sold. Thereafter the Wilkins were refused credit when they attempted to purchase a washing machine and dryer and were informed that their credit was inadequate. The Wilkins re-

tained an attorney and filed a civil suit against respondents and others. The suit was dismissed upon payment of a Five Hundred Dollar ($500) settlement to the Wilkins. Respondent himself paid Two Hundred Fifty Dollars ($250) toward the settlement. Wilkins filed a complaint with petitioner."

An examination of the transcript on appeal discloses that there was competent and substantial evidence to support the foregoing findings. Hence, we should not and do not disturb them.

From the foregoing facts the Hearing Commission then found and concluded in part as follows:

"The competent and substantial evidence upon the whole record does not support a conclusion that respondent Steger individually, or in his capacity as president of respondent Realty Exchange violated subparagraph (1) of § 339.100. The evidence indicates that Steger *initially* on July 7, 1968 planned to have Realty Exchange assume the liability on the 4449 South Benton property. Then subsequently on July 24, 1968 Abbott and the Wilkins signed the Addendum which provided that Mid-America Mortgage Co. would assume the liability of the property at 4449 South Benton. The FHA firm commitment specified that the Wilkins had to be released from liability on the 4449 South Benton property to qualify for mortgage insurance on the property at 2118 East 50th Street.

"However, the firm commitment also provided in the alternative, that conveyance of the 4449 South Benton property to an owner-occupant would also meet the conditions for mortgage insurance. The firm commitment was signed by the Wilkins on July 29, 1968, and the following day Verries Hall signed the affidavit that she would be an owner-occupant. It is the conclusion of this Commission that the Wilkins thereafter knowingly conveyed the 4449 South Benton property to Verries Hall. This evidence does not support a conclusion that respondent Steger made a substantial misrepresentation or false promise to the Wilkins in violation of § 339.100(1), RSMo 1969, V.A.M.S.

"Respondent Steger in his capacity of president of respondent Realty Exchange violated subparagraph (7) of the § 339.-100, RSMo 1969, V.A.M.S., when he failed to adequately inform Wilkins of his continuing liability for this outstanding obligation on the 4449 South Benton property. Respondent also violated subparagraph (7) when he assured the Wilkins that they had nothing to worry about after they had been contacted by the mortgagee demanding payments on their mortgage obligation. Of course, only City-Wide Mortgage Company, the true holder of the note secured by a deed of trust on the 4449 South Benton property, could release Wilkins' obligation and satisfy the record. Cf. Simon [Simmon] v. Marion, 227 S.W.2d 127, 133 (K.C.App., 1950).

"A real estate broker is in a confidential and fiduciary relationship with his customer. The broker is obligated to make a frank disclosure of all material facts concerning a real estate transaction, and the broker must exercise utmost fidelity and good faith towards his customer. Dittmeier v. Missouri Real Estate Commission, 237 S.W.2d 201, 206 (St.L.App., 1951). Respondent Steger's conduct in this regard was improper and demonstrated bad faith or gross incompetence on his part in violation of § 339.100(7), RSMo 1969, V.A.M.S. However, the evidence does not support a conclusion that respondent Steger prepared the warranty deed, or caused the Wilkins to falsely swear that the 4449 South Benton property was free and clear of any incumbrance."

In the foregoing paragraphs the Hearing Commission not only arrives at certain conclusions of law but also makes additional findings of fact. It finds that various

representations and commitments made by respondent Steger which in fact were affirmative in nature did not constitute substantial misrepresentation or false promises to the Wilkins. The commissioner who heard and observed the witnesses was entitled to make such a finding. There was evidence to support it.

However, recognizing the nature of the relationship between a real estate broker and his customer, with the resulting obligation on the broker to make a frank disclosure of all material facts concerning the real estate transaction, the Hearing Commission expressly found that even though Wilkins had knowingly deeded the South Benton property to Verries Hall after he had signed the commitment for FHA insurance, respondent Steger had failed to adequately inform Wilkins of his continuing liability on the mortgage on the South Benton property. This involved a failure by Steger to tell Wilkins that Mid-America Mortgage had not assumed liability on the South Benton property even though the signed contract addendum had provided that it would. Secondly, the Hearing Commission found that Steger incorrectly informed the Wilkins that they had nothing to worry about by the demands on them for delinquent payments on the South Benton mortgage. Again, the transcript contains evidence which was adequate to support these findings by the Hearing Commission. Wilkins had testified that he did not know until several months later following employment of an attorney that Mid-America had not assumed liability for the mortgage and Mrs. Wilkins told of the oral and written demands on them by the holder of the South Benton mortgage and of Steger's assuring her that there was nothing to worry about and that such billings of prior owners are sometimes mistakenly made. As a result, the Wilkins ignored the demands.

■ Having concluded that Steger failed to inform Wilkins of the fact that Mid-America had not assumed the mortgage and also had erroneously informed them that they had nothing to worry about as a result of the demands for delinquent payments on the South Benton property, the Hearing Commission concluded that these constituted bad faith or gross incompetence in violation of § 339.100(7). This, however, was a legal conclusion, not a finding of fact, and this court is not bound by the Hearing Commission's interpretation of the statute and its applicability. Tom Boy, Inc. v. Quinn, supra, 431 S.W.2d 221 [2].

We conclude and hold that the above recited occurrences (found by the Commission) constituted misrepresentations and were violations of § 339.100(1) rather than § 339.100(7). As such, they provide a basis for the suspensions recommended by the Hearing Commission and ordered by the Real Estate Commission.[3]

■ The order entered by the Circuit Court reversing the findings and decision of the Hearing Commission states that such findings would require a real estate broker to furnish a legal opinion and continuing legal advice concerning real estate transactions to which he is not a party. We do not agree and by this opinion do not intend to hold that a real estate broker should or may furnish legal advice.[4] The Hearing Commissioner simply recognized that since Wilkins had emphasized that he

3. While failure of Steger to inform Wilkins that Mid-America Mortgage had not assumed liability as it had contracted to do was in the nature of misrepresentation by silence rather than by affirmative misrepresentation or false promises, nevertheless, such silence amounted to false representation on Steger's part, particularly in view of his knowledge that Wilkins had emphasized in his negotiations that he wanted to be completely relieved of any liability on the South Benton property so as to avoid any possibility of having two payments to make.

4. This court had held previously that a real estate broker may not give advice or opinions as to the legal rights of the parties, even in transactions in which he is acting as a broker. Hulse v. Criger, 363 Mo. 26, 247 S.W.2d 855 (1952).

wanted to avoid liability on two houses and since the contract of sale expressly provided that Mid-America Mortgage would assume the mortgage on the South Benton property, Steger was obligated to disclose the fact that Mid-America Mortgage had not assumed the South Benton mortgage and that Wilkins had not been relieved thereof.

The judgment of the circuit court is reversed and the cause is remanded with directions to enter judgment consistent with the views herein expressed which affirms the order of suspension made by the Real Estate Commission.

All concur.