Daniel R. **BOYLE**, Jr., Appellant,

v.

**MISSOURI REAL ESTATE COMMIS-SION and Missouri Administrative Hearing Commission, Respondents.**

**No. KCD 26858.**

Missouri Court of Appeals, Kansas City District.

May 3, 1976.

Motion for Rehearing and/or Transfer Denied June 1, 1976.

Richard A. Erickson, John B. Ewing, Jr., Kansas City, for appellant.

John C. Danforth, Atty. Gen., Harvey M. Tettlebaum, Asst. Atty. Gen., Jefferson City, for respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

■ Appeal from judgment which affirmed revocation of real estate broker's license. This court may not substitute its judgment on the evidence for that of the respondents and may not set aside the decision, unless it is not supported by competent and substantial evidence on the whole record, or it is not authorized by law, is arbitrary, capricious, or involves an abuse of discretion. § 536.140, RSMo 1969; *Missouri Real Estate Comm. v. Steger*, 509 S.W.2d 47, 49[1] (Mo. banc 1974). Affirmed.

On June 17, 1969, Mr. and Mrs. Leslie Sims went to the office of Daniel R. Boyle, Jr., a real estate broker, at 1800 East 75th Street, Kansas City, Missouri. They met Daniel R. Boyle, Jr., who directed his salesman, Augusta John Collins, to show them a house owned and offered for sale by Mr. and Mrs. Stanley Katz. Mr. Collins showed Mr. and Mrs. Sims a house at 1631 East 77th Terrace. After viewing the house at 1631 East 77th Terrace, Mr. and Mrs. Sims and Mr. Collins returned to the Boyle Realty office. Mr. Collins introduced them to another Boyle agent, David Graham, who had Mr. and Mrs. Sims execute an offer to purchase and a verification of deposit. Eventually, Mr. and Mrs. Sims paid Mr. Boyle, through his agent, Augusta John Collins, $50 for a "credit check."[1] They gave $50 in cash to Mr. Collins at their home on Askew for which they received a receipt. Mr. Collins indicated to Mr. and Mrs. Sims that evening at their home on Askew that he would notify them concerning the outcome of the credit check. On July 20, 1969, the offer to purchase expired.

Approximately a week after June 17, 1969, Mr. Collins informed Mr. and Mrs. Sims that their credit was approved for the purchase of the house at 1631 East 77th Terrace. At that time, Mr. and Mrs. Sims told Mr. Collins that one of their boys had been injured and Mrs. Sims intended to quit work to provide adequate supervision for her children. They also advised Mr. Collins they no longer wanted to buy 1631 East 77th Terrace, and requested the return of their $50 deposit. They were told they would have to see Daniel R. Boyle, Jr.

Mr. and Mrs. Sims continued to look for a larger house. On June 30, 1969, they signed a real estate sales contract for the purchase of a house at 1301 East 59th Street, Kansas City, Missouri, owned by Mr. and Mrs. Marion McCord. On or about July 6, 1969, Mr. and Mrs. Sims received a warranty deed executed by Mr. and Mrs. McCord for the property formerly owned by the McCords on 59th Street. The warranty deed for 1301 East 59th Street was recorded on July 10, 1969.[2]

Mr. and Mrs. Sims made several calls to Boyle Realty to obtain the return of their $50. Approximately a month after they were first in the Boyle Realty office, they made arrangements with Mr. Boyle to obtain the return of their $50 at the Boyle Realty office, and went to Boyle Realty on a Saturday. Daniel R. Boyle, Jr., presented

---

1. According to Mr. Graham, this was earnest money, and the balance of the down payment would be by way of a credit of $400 for an equity in property owned by Mr. and Mrs. Sims at 4508 Askew.

2. Mr. and Mrs. Sims did not advise Boyle Realty of this purchase.

them with some "release papers"[3] to sign to obtain the return of their $50 deposit. After signing such papers, Mr. and Mrs. Sims were given the $50 in cash by Mr. Boyle. They left the Boyle Realty office and never returned.

On or about August 8, 1969, Mr. and Mrs. Sims moved into the house at 1301 East 59th Street. Shortly thereafter, they rented their house at 4508 Askew to Floyd and Linda Wesley who occupied the house from the time Mr. and Mrs. Sims moved out until the middle of June, 1971. Mr. and Mrs. Sims had no knowledge of recording of any papers on the property at 1631 East 77th Terrace until they were so advised by a Mr. Hammett on June 23, 1970, who gave them a copy of a foreclosure notice on that property from the Daily Record. On July 24, 1970, the trustee's deed was recorded on the property located at 1631 East 77th Terrace.

On June 24, 1969, the Veterans Administration listed for sale property owned by it at 1523 East 76th Street, and placed a notice in the Kansas City Star notifying the public of the availability of the property. Properties of this type normally are listed for six days and all offers received by the Veterans Administration during the 6-day period are held together for selection of the most acceptable offer. Any real estate broker is eligible to submit a bid or a contract to the Veterans Administration on such a repossessed property.

In June of 1969, Mrs. Richard George (Sirrena) Roberts went to Boyle Realty for assistance in finding a home to purchase. Mrs. Roberts had seen a house on 76th Street which was posted as a Veterans Administration repossessed home. Mrs. Roberts spoke with Daniel Boyle's wife, Frances Boyle, and determined from Mrs. Boyle that Boyle Realty had a "listing" on the property. Mrs. Boyle then directed Boyle's agent, Augusta John Collins, to show Mrs. Roberts the Veterans Administration repos-

sessed house on 76th. After viewing the house on 76th Street with Mr. Collins, Mrs. Roberts returned to Boyle Realty with Mr. Collins. Mrs. Roberts discussed with Mrs. Boyle the financing of the 76th Street property in the event that Mrs. Roberts's husband decided to buy it. Mrs. Boyle requested Mrs. Roberts to bring Mr. Roberts's separation and discharge papers to the office.

The following day Mrs. Roberts took her husband's discharge and separation papers to Boyle Realty and presented them to Mrs. Boyle. Mrs. Boyle took the papers, made photostatic copies, and returned them to Mrs. Roberts. On the same day, or shortly thereafter, Mrs. Roberts signed a Veterans Administration contract of sale for the property located at 1523 East 76th Street, took the Veterans Administration contract of sale home for her husband to sign, and returned it to Mrs. Boyle. Mrs. Roberts waited about a week and then went to Boyle Realty to determine whether she had been the successful bidder on the 76th Street property. At that time, she was informed that the house on 76th Street was not available to her. Sometime prior to learning of the unavailability of the 76th Street property, Mr. and Mrs. Roberts tendered a $650 check dated July 8, 1969, to Boyle Realty. The check was deposited by Boyle Realty on or about July 10, 1969. Mr. and Mrs. Roberts never received return of the $650.

On the same day that Mrs. Roberts learned that the 76th Street property was not available to her, she was informed by Mrs. Boyle that there was a house available at 1631 East 77th Terrace. Mrs. Roberts expressed an interest in this house and Mrs. Boyle directed Augusta John Collins to show it to her. After viewing this house, Mrs. Roberts went home to discuss the matter with her husband.

Several days later, around July 28, 1969, Mrs. Roberts returned to Boyle Realty and

3. The record shows that documents, copies of which were never provided to them, executed at this time, unknown to Mr. and Mrs. Sims, included a note and deed of trust for the balance due on 1631 East 77th Terrace, a warranty deed conveying 4508 Askew to Rubin Ra-

mirez, a plumber employed by Mr. Boyle, who was to do $400 worth of work for the equity credit to be given Mr. and Mrs. Sims, and a warranty deed conveying 1631 East 77th Terrace to one Richard George Roberts.

discussed with Frances Boyle the price of the house and available financing. After this discussion, Mrs. Roberts told Mrs. Boyle that they would take the house at 1631 East 77th Terrace.

Later that same week, Mrs. Roberts was called by Daniel R. Boyle, Jr., who asked if she was still interested in the property on 76th Street. Mrs. Roberts replied that she was interested in the house on 76th Street. Mr. Boyle told Mrs. Roberts that Boyle Realty would begin to process the loan and that he would hear one or two days later concerning the Roberts's loan.

Mrs. Roberts waited three days without hearing from Boyle Realty. The first part of August, she went to Boyle Realty and talked with Daniel R. Boyle, Jr., about the 76th Street property. Mr. Boyle told her that her loan had "fallen through." He asked Mrs. Roberts if she was still interested in the property at 1631 East 77th Terrace. Mrs. Roberts and Mr. Boyle had a discussion about when the Robertses could occupy the house; Mr. Boyle indicated a few days. Mrs. Roberts and Daniel R. Boyle, Jr., also discussed the Robertses buying the stove that was in the property at 1631 East 77th Terrace. Mr. Boyle told her that she could purchase the stove for $100. Mrs. Roberts asked Mr. Boyle about the payments. He told her that they were about $124 per month and that Mrs. Roberts would receive a payment book in the mail along with a warranty deed on the property. Mr. and Mrs. Roberts did not sign any documents at any time in connection with their "purchase" of the property at 1631 East 77th Terrace.

After this meeting at the Boyle Realty office, Mrs. Roberts returned home. Until the time the Robertses moved into the property at 1631 East 77th Terrace, Mrs. Roberts had several conversations on the telephone with either Frances Boyle or a Mr. Ortega who worked for Boyle Realty. On August 15, 1969, Mr. and Mrs. Roberts went to Boyle Realty intending to sign whatever documents were necessary to obtain title to the property at 1631 East 77th Terrace. When they arrived at Boyle Realty, Daniel

R. Boyle, Jr., and Frances Boyle were present. Mr. Boyle told Mr. and Mrs. Roberts that it was not necessary for them to sign any papers, that "it was all taken care of." On August 15, 1969, Boyle Realty received a check from Missouri Valley Investment Company for its commission on a "sale" of 1631 East 77th Terrace to Mr. and Mrs. Sims.

Later that day, after securing a key to 1631 East 77th Terrace from Frances Boyle, Mr. and Mrs. Roberts returned to 1631 East 77th Terrace and purchased the stove in the house from Boyle Realty. They gave a check, dated August 15, 1969, for $100 to Augusta John Collins.

Approximately one to two weeks after the Robertses moved into the property at 1631 East 77th Terrace, they received a payment book from Investors Mortgage Bankers with a check for their first month's payment totaling $126. Sometime later, Mr. and Mrs. Roberts received another payment book from Investors Mortgage Bankers with the names of Leslie and Delores Sims on it. The Robertses sent in their second payment with the payment book with the Sims's name on it, and received a payment book with their name pasted on it. In November, 1969, the Robertses sent in a third payment on the house at 1631 East 77th Terrace.

Mr. and Mrs. Roberts did not send in any additional payments after the third payment. They were angry because they had received no closing papers or any evidence of title and because they were not actual owners of the property at 1631 East 77th Terrace. After calling Boyle Realty on a number of occasions and attempting to obtain a warranty deed, the Robertses finally called the Real Estate Board of Kansas City to assist them in obtaining a warranty deed. Shortly thereafter, and sometime during the month of January, 1970, the Robertses received a Xerox copy of a general warranty deed purportedly executed by Leslie and Delores Sims without acknowledgment of their signatures. Other than the Xerox copy of the warranty deed for 1631 East 77th Terrace, Mr. and Mrs. Roberts received

no other documents in connection with their purchase of the property at 1631 East 77th Terrace. Mr. and Mrs. Roberts and Mr. and Mrs. Leslie Sims never met until May or June of 1970.

In February of 1970, Mr. and Mrs. Roberts received a home mortgage default notice from Investors Mortgage Bankers informing them that they were behind three payments on their loan. The following month they received a notice from Investors Mortgage Bankers notifying Mr. and Mrs. Sims that they were past due five payments on their loan. In June of 1970 Mr. and Mrs. Roberts received from Investors Mortgage Bankers a notice that foreclosure on 1631 East 77th Terrace had been completed. On August 8, 1970, Mr. and Mrs. Roberts moved from the property located at 1631 East 77th Terrace.

On June 19, 1969, Missouri Valley Investment Company, proposed lender for purchase by Mr. and Mrs. Sims of the property at 1631 East 77th Terrace, was requested by Boyle Realty to order an appraisal on the property at 1631 East 77th Terrace. Sometime later, Boyle Realty requested Missouri Valley Investment to obtain a credit report on Leslie L. and Delores Sims. The appraisal was received by Missouri Valley Investment from the Federal Housing Administration on June 25, 1969. Missouri Valley Investment then submitted an application for credit approval to the Federal Housing Administration. The application for credit approval was submitted to the FHA in the form of a package of documents. The package originally submitted by Missouri Valley Investment included an unsigned firm commitment form and an original copy of a mortgagee's application, together with all documents related to the credit of Mr. and Mrs. Leslie Sims. After Missouri Valley Investment received a copy of the firm commitment, they ordered a title report and a survey. After Missouri Valley determined that the title was in proper form, they prepared the closing documents. The preparation of the warranty deed was done by Boyle Realty.

The entire loan was not submitted by Missouri Valley Investment to the Federal Housing Administration until Missouri Valley received copies of all closing documents, a copy of the firm commitment, and a copy of the recorded warranty deed transferring title to 4508 Askew from the Simses to an "owner-occupant."

Missouri Valley Investment received the firm commitment from the FHA on or around July 18, 1969. Soon thereafter, Missouri Valley Investment offered the loan on 1631 East 77th Street to Investors Mortgage Bankers, Inc., of Kansas City. Two days later, the "closing" took place in the office of Boyle Realty. No representative of Missouri Valley Investment was present at the "closing."

When Missouri Valley received the closing documents from Boyle Realty, it sent the note, deed of trust, warranty deed, and mechanic's lien affidavit to McDaniel Title Company to be recorded. On or about July 30, 1969, Missouri Valley Investment received a disbursement memo from McDaniel Title Company. Missouri Valley Investment then proceeded to prepare the seller's statement. On or about August 11, 1969, Missouri Valley Investment caused to be recorded a warranty deed whereby Leslie and Delores Sims divested themselves of the property they owned at 4508 Askew. Actual disbursement by Missouri Valley Investment of the proceeds of sale took place between August 15, 1969, and August 21, 1969. On or about August 18, 1969, Missouri Valley Investment transmitted numerous documents to Investors Mortgage Bankers to enable them to purchase the loan on 1631 East 77th Terrace. This loan was purchased by Investors Mortgage Bankers on or about August 19, 1969. On or about September 2, 1969, Missouri Valley Investment received the mortgage insurance certificate from the FHA for the loan on the property at 1631 East 77th Terrace.

On July 30, 1969, a general warranty deed dated July 25, 1969, signed by Mr. and Mrs. Stanley Katz conveying the property at 1631 East 77th Terrace to Mr. and Mrs. Leslie Sims and a deed of trust dated July

25, 1969, signed by Mr. and Mrs. Leslie Sims as mortgagors on the property located at 1631 East 77th Terrace were duly recorded. On August 11, 1969, a general warranty deed dated August 4, 1969, signed by Mr. and Mrs. Leslie Sims conveying property located at 4508 Askew, Kansas City, Missouri, to one Rubin Ramirez, was duly recorded. On or about October 3, 1969, a general warranty deed dated August 5, 1969, was duly recorded by McDaniel Title Company in accommodation for Boyle Realty, which was signed by Rubin Ramirez, conveying property located at 4508 Askew, Kansas City, Missouri, to Mr. and Mrs. Leslie Sims. On or about February 7, 1970, a general warranty deed dated September 25, 1969, signed by Mr. and Mrs. Leslie Sims conveying the property at 1631 East 77th Terrace to one Richard George Roberts was recorded by McDaniel Title Company in accommodation for Boyle Realty Company. On February 5, 1970, a general warranty deed dated September 23, 1969, signed by Rubin Ramirez, conveying property located at 4508 Askew, Kansas City, Missouri to Mr. and Mrs. Leslie Sims was duly recorded.

The Administrative Hearing Commission found:

"The substantial and competent evidence upon the whole record supports a conclusion that [Mr. Boyle] violated Section 339.100(1) RSMo. by substantially misrepresenting to the Sims that the documents they signed on or about August 5, 1969, were release papers. It is reasonable to conclude that these documents consisted of the FHA firm commitment, the non-discrimination certification, and the warranty deed from Sims to Ramirez for 4508 Askew, as the Sims signatures on these documents were required by the FHA to insure the 77th Terrace loan. * * *

"The substantial and competent evidence upon the whole record supports the conclusion that [Mr. Boyle] violated Section 339.-100(7) RSMo. by failing to inform the Sims that they were not rescinding the purchase of the 77th Terrace house; but rather they were retaining title and selling the 77th Terrace house on an assumed loan basis to the Roberts. In addition, [he] failed to inform the Sims that they were transferring title in the 4508 Askew property to Ruben Ramirez, who was in turn to subsequently transfer title back to them. [His] failure to inform the Sims constituted improper conduct on [his] part, even though the Sims were not [his] own clients. * * However, the evidence does not support a conclusion that [his] conduct constituted fraudulent dealings in violation of Section 339.100(7), as all of the elements of fraud were not proven * * *."

The Missouri Real Estate Commission, after according a hearing to Daniel R. Boyle, Jr., and upon the findings of fact and conclusions of law of the Administrative Hearing Commission, revoked Mr. Boyle's real estate broker's license. §§ 161.292, 339.100, RSMo 1969.

The foregoing statement demonstrates competent and substantial evidence to support the violations of Section 339.100(1) and (7), RSMo 1969, as found by the Administrative Hearing Commission and adopted by the Real Estate Commission. Section 339.-100, RSMo 1969, provides that the Commission shall have power to suspend or revoke a broker's license "if the licensee is performing or attempting to perform * * * acts or is deemed to be guilty of: (1) Making substantial misrepresentations * * * in the conduct of his business * * *; (7) Any other conduct which constitutes untrustworthy or improper, fraudulent or dishonest dealings, or demonstrates bad faith or gross incompetence." *Robinson v. Missouri Real Estate Commission*, 280 S.W.2d 138, 140[1] (Mo.App.1955).

Appellant contends, however, (I) that even if he made the misrepresentations attributed to him, such were not in the conduct of his real estate business and accordingly could not constitute a ground for revocation of his license under a "controlling decision."

The mentioned decision is *Robinson v. Missouri Real Estate Commission*, supra, which holds that conduct of a real estate broker unrelated to the real estate business does not afford ground for revocation of his

broker's license under Section 339.100, supra. Robinson, a real estate broker, was asked to, and did, undertake to collect two notes received from the sale of a house by another broker. Instead, he sold the notes for $2,586.37 and reported to his customer that he could get $1850. The customer relied upon the representation and authorized consummation of the sale. The check for $2,586.37 was made payable to the customer; however, he never saw the check and received only $1850. Robinson had his salesman endorse the customer's name and pocketed the difference. In relieving Robinson from revocation of his broker's license, the court observed that "Reprehensible as [his] conduct was, it was unconnected with his activities and duties as a real estate broker." 280 S.W.2d l.c. 140.

The charges and findings in this case are that Daniel R. Boyle, Jr., a real estate broker, obtained the signatures of Leslie and Delores Sims on certain documents through misrepresentation and failure to inform with respect to their true nature. Instead, the documents consisted of FHA required documents, a note, deed of trust and warranty deed involving property at 1631 East 77th Terrace, and a warranty deed conveying title to 4508 Askew. In contrast to the broker's conduct in *Robinson v. Missouri Real Estate Commission*, supra, the documents and Mr. Boyle's actions in obtaining them resulted in a purchase and sale of properties at 1631 East 77th Terrace and at 4508 Askew. Such actions are within the purview of the definition of a real estate broker as one "who advertises, claims to be or holds himself out to the public as a real estate broker or dealer and who for a compensation or valuable consideration,  *  * sells or offers for sale, buys or offers to buy, exchanges or offers to exchange the real estate of others;  *  *  *  or offers to negotiate a loan secured or to be secured by a deed of trust or mortgage on real property." Section 339.010, RSMo 1969; *Propp v. Missouri Real Estate Commission*, 504 S.W.2d 137, 140–141 (Mo.App.1973). See also *Franta v. Hodge*, 302 S.W.2d 291 (Mo. App.1957). As a consequence, such actions of Daniel R. Boyle, Jr., in the conduct of his

real estate business subjected him to the revocation provisions of Section 339.100, supra.

■  Appellant contends (II) that he was denied due process of law where the only evidence of misrepresentation came from "inconsistent and conflicting statements of Leslie and Delores Sims contrary to [his] undisputed exhibits." He argues this to have shown by "attempted changes" of depositions of Mr. and Mrs. Sims "before signing and by the inconsistency of their testimony in their deposition with the testimony on the trial as to the relationship in time when the events complained of occurred." He asserts, in conclusion, that there was a failure of proof of charges under Section 339.100. Appellant cites *State v. Eaton*, 280 S.W.2d 63 (Mo.1955), *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *In re Jones*, 431 S.W.2d 809 (Mo. banc 1966), for the proposition that knowing use of perjury by the prosecution in a criminal case which results in prejudice to the defendant violates his right to due process; and *State ex rel. Johnson v. Clark*, 288 Mo. 659, 232 S.W. 1031 (banc 1921), for the proposition that a revocation based on hearsay, and thus incompetent testimony, cannot stand.

In a similar attack on the testimony of Mr. and Mrs. Sims, appellant contends (III) that their hearing testimony conflicted with their deposition testimony and documents in evidence, and therefore lacked probative value to support the findings of the Administrative Hearing Commission.

On this he cites *Steele v. Kansas City Southern Ry. Co.*, 265 Mo. 97, 175 S.W. 177 (1915), holding that testimony of a plaintiff constituting a judicial admission of contributory negligence precludes recovery as a matter of law in a negligence action; and *Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644 (1933); *Rainwater v. Wallace*, 351 Mo. 1044, 174 S.W.2d 835 (1943), and *Foerstel v. St. Louis Public Service Co.*, 241 S.W.2d 792 (Mo.App.1951), for the proposition that when a party relies on his own testimony, or that of a single witness, and it

is so contradictory and conflicting, with nothing else to show which version is true, it lacks probative force and no case is made.

There is no evidence of perjury with respect to the testimony of Mr. and Mrs. Sims, and the challenge to their testimony goes to its credibility rather than its competency. The record shows only that Mr. and Mrs. Sims made changes in their depositions prior to signing them respecting times of occurrences. Mr. Sims conceded the instances where his testimony at the hearing differed from that contained in his deposition; Mrs. Sims was not cross-examined in this respect. In addition to Mr. and Mrs. Sims, the Real Estate Commission presented several other witnesses and a number of exhibits which constituted "other facts and circumstances * * * to show which story of the witness is true." *Adelsberger v. Sheehy*, supra, l.c. 647. Accordingly, discrepancies, if any, between deposition testimony and hearing testimony were for resolution by the trier of facts, *Truitt v. Rothschild-Greenfield Co.*, 32 S.W.2d 770 (Mo.App.1930); and the circumstances surrounding the testimony of Mr. and Mrs. Sims and their testimony itself simply raised fact and credibility questions finally resolved by the Administrative Hearing Commission, *Missouri Real Estate Commission v. Steger*, supra.

■ Appellant asserts (IV) that this proceeding was for imposition of a penalty or forfeiture, and thus was barred by Section 516.380, RSMo 1969, when not brought within one year.

This proceeding was conducted in connection with Chapter 339, RSMo., governing real estate brokers, pursuant to Sections 161.252 through 161.342, RSMo 1969, as enacted Laws 1965. Such provisions are remedial in the public interest and proceedings thereunder "are not penal in nature, are not 'quasi-criminal' and do not contemplate 'punitive' sanctions." *State Board of Registration For Healing Arts v. Masters*, 512 S.W.2d 150, 164 (Mo.App.1974); *Younge v. State Bd. of Registration For Healing Arts*, 451 S.W.2d 346, 349 (Mo.1969). Therefore, Section 516.380, supra, in limita-

tion of actions on penal statutes has no application to this proceeding.

Appellant asserts (V) that the Real Estate Commission "introducing documents into evidence vouches for their authenticity and the contents are prima facie so that all of complainant's exhibits offered and received into evidence must be presumed as to their dates, execution and contents and it may not question any of them without proof." It is not necessary to discuss this proposition because appellant has not demonstrated how or where any such exhibit bars or defeats the findings of the Administrative Hearing Commission. *Kansas City v. Garza*, 493 S.W.2d 659 (Mo.App.1973).

■ Appellant asserts (VI) that "Mr. and Mrs. Sims being literate, educated and familiar with real estate transactions are charged with the knowledge of the documents they signed and should not be heard to say that they were misled into not reading them and did not know their contents. Appellant denies that such misrepresentations were made but if they were made, the Sims were not entitled to rely upon them."

Similarly, appellant asserts (VII) that "the documents it is charged Mr. and Mrs. Sims were induced to sign were closing documents which they were under contract to execute * * * and their signing could not damage them."

The issues resolved by the Administrative Hearing Commission were whether Daniel R. Boyle, Jr., as real estate broker, made "substantial misrepresentations" in violation of Section 339.100(1), and whether he was guilty of "improper conduct" through failure to inform in violation of Section 339.100(7). The knowledge with which Mr. and Mrs. Sims might be charged, their right to rely on Mr. Boyle, and their damage, if any, are not relevant to the questions. Thus, appellant's assertions amount to nothing more than abstract propositions and present nothing for review. *Cady v. Kansas City Southern Ry. Co.*, 512 S.W.2d 882 (Mo.App.1974).

■ Appellant asserts (VIII) that any inducing misrepresentations were shown to

have been made vicariously by Mr. Ortega for which appellant is not liable.

It already has been demonstrated that there was competent and substantial evidence to support the finding that Daniel R. Boyle made "substantial misrepresentations." Mr. Ortega's inducement, if so, is not relevant to the question, and its assertion also presents nothing more for review.

■ Appellant contends (IX) that Section 339.100 limits suspension or revocation of a broker's license to cases of fraud or incompetency; that any disciplinary action not based on a finding of fraud or incompetency is outside the police powers of the State as not reasonably related to the purpose of the statute, and constitutes arbitrary discrimination in violation of his rights to equal protection.

This contention is founded on the Administrative Hearing Commission's determination that fraud was not proved in connection with the finding of violation of Section 339.100(7). Appellant argues that in this finding and in the cases cited, he "must be guilty of fraud or he is guilty of nothing." He cites *Gilbert v. Edwards*, 276 S.W.2d 611 (Mo.App.1955), where the court in determining that Section 339.100 was a police regulation rather than a revenue measure, said the intention of the legislature in enacting Section 339.100 and of Chapter 339 was "to protect the public against fraud and incompetency in real estate transactions." 276 S.W.2d l.c. 616.

Similarly, appellant asserts (X) that "application of the privilege doctrine in this case fosters uncontrolled discretion and denies a fair trial" in violation of due process and equal protection rights.

*Gilbert v. Edwards*, supra, in its expression of legislative intent, does not limit the Real Estate Commission's power to suspend or revoke a broker's license to cases of . fraud and incompetency; and such powers can be exercised only upon notice and hearing which were duly accorded in this case.

Section 339.100, supra, authorizes the Commission to suspend or revoke a broker's license if he is found guilty of any of the eleven acts set out by subdivisions, including 339.100(1) and (7), applicable to this case.

The cases recognize that the power may be exercised in any one or more of the eleven acts, irrespective of fraud. See, e. g., *Robinson v. Missouri Real Estate Commission*, supra; *Propp v. Missouri Real Estate Commission*, supra; *Missouri Real Estate Commission v. Steger*, supra; *Dittmeier v. Missouri Real Estate Commission*, 237 S.W.2d 201 (Mo.App.1951).

■ Appellant contends (XI) that absence of damage to Mr. and Mrs. Sims "exonerated" him "from any wrongdoing under § 339.100(1) and (7) since it is contrary to the requirement of damages flowing from the alleged misrepresentations or as a required element of fraud."

Again, the issues are whether Daniel R. Boyle, Jr., made substantial misrepresentation in violation of Section 339.100(1) and whether he was guilty of improper conduct in violation of Section 339.100(7). Fraud is no longer in this proceeding; there is no issue of damages to Mr. and Mrs. Sims, and Section 339.100 does not make a finding of such damages a prerequisite to findings of action in violation of subsections (1) and (7). Appellant cites *Dittmeier v. Missouri Real Estate Commission*, supra, but that case held only that there was no violation of Section 339.100 in failing to incorporate a clause relieving against forfeiture in real estate contracts, not because of an absence of damages, but because there was no showing the form contract was used fraudulently, dishonestly, or in bad faith.

Judgment affirmed.

All concur.